1
2
3
4
5         UNITED STATES DISTRICT COURT
6         EASTERN DISTRICT OF WASHINGTON
7

8  JAMES R. PEARSON,                    No. 2:14-CV-00351-JTR
9
                Plaintiff,              ORDER GRANTING
10                                      DEFENDANT'S MOTION FOR
11              v.                      SUMMARY JUDGMENT
12 CAROLYN W. COLVIN,
13 Commissioner of Social Security,
14
                Defendant.
15

16       **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

17 Nos. 13, 14.  Attorney Lora Lee Stover represents James R. Pearson (Plaintiff);

18 Special Assistant United States Attorney Jeffrey R. McClain represents the

19 Commissioner of Social Security (Defendant).  The parties have consented to

20 proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

21 record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion

22 for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

23                          **JURISDICTION**

24       Plaintiff filed applications for Disability Insurance Benefits (DIB) and

25 Supplemental Security Income (SSI) on February 14, 2011, alleging disability

26 beginning January 25, 2008.  Tr. 227-39.  The applications were denied initially

27 and upon reconsideration.  Tr. 143-60, 163-71.  Administrative Law Judge (ALJ)

28 James Sherry held a hearing on December 20, 2012, at which Plaintiff, represented

by an attorney representative, testified as did vocational expert (VE) K. Diane Kramer. Tr. 103-40. The ALJ issued an unfavorable decision on February 26, 2013. Tr. 84-97. The Appeals Council denied review. Tr. 1-4. The ALJ's February 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 30, 2014. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 54 years old at the time of the hearing. Tr. 109. Plaintiff graduated from high school and has a two year degree in architecture. Tr. 110. Plaintiff previously worked in construction, eventually becoming a field supervisor/site foreman. Tr. 111, 114.

Plaintiff stopped working sometime in 2007 after he contracted MRSA and collapsed on the job. Tr. 115-16. Plaintiff underwent a number of surgeries. Tr. 119. Plaintiff testified that he has pain all over his body, especially below his hips. Tr. 120. Plaintiff testified that his pain started after he fell from a five story building in 1984, but his pain started to become debilitating sometime in 2007. Tr. 120-21. Plaintiff also testified that he has pain in his neck, which causes numbness in his hands. Tr. 123-24. Plaintiff testified that he has hand tremors resulting from a minor stroke. Tr. 130. Plaintiff testified that his carpal tunnel usually only bothers him when he puts on a jacket or if there is stress on his shoulders. Tr. 131.

Plaintiff testified that he can climb a short flight of stairs. Tr. 125. Plaintiff stated he can alternate between sitting, walking, and lying down for about fifteen to twenty minutes at a time. Tr. 125-26. Plaintiff testified that he cannot sleep longer than four hours at a time because his body starts to hurt. Tr. 126. Plaintiff testified that he cannot watch a movie start to finish because he loses interest. Tr. 126.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

Plaintiff can prepare simple, microwavable meals and do dishes, but doing chores takes him a long time and he needs to take breaks. Tr. 127. Plaintiff has difficulty standing while taking showers and needs to sit while getting dressed. Tr. 128. Plaintiff's hand pain prevents him from tying his shoelaces and is aggravated from lifting as much as a gallon of milk. Tr. 132.

Plaintiff engaged in physical therapy, which only made his pain worse. Tr. 121. Plaintiff uses a cane; his doctors did not prescribe use of a cane, but Plaintiff testified that his doctors approve of him using it. Tr. 124-25.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v.*

1  *Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

2  **SEQUENTIAL EVALUATION PROCESS**

3  The Commissioner has established a five-step sequential evaluation process

4  for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

5  416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one

6  through four, the burden of proof rests upon claimants to establish a prima facie

7  case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This

8  burden is met once claimants establish that physical or mental impairments prevent

9  them from engaging in their previous occupations.  20 C.F.R. §§ 404.1520(a)(4),

10  416.920(a)(4).  If claimants cannot do their past relevant work, the ALJ proceeds

11  to step five, and the burden shifts to the Commissioner to show that (1) the

12  claimants can make an adjustment to other work, and (2) specific jobs exist in the

13  national economy which claimants can perform.  *Batson v. Comm'r of Soc.  Sec.*

14  *Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an

15  adjustment to other work in the national economy, a finding of "disabled" is made.

16  20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

17  **ADMINISTRATIVE DECISION**

18  On February 26, 2013, the ALJ issued a decision finding Plaintiff was not

19  disabled as defined in the Social Security Act.  Preliminary, for purposes of

20  Plaintiff's DIB application, the ALJ found that Plaintiff met the insured status

21  requirements through December 31, 2012.  Tr. 89.

22  At step one, the ALJ found Plaintiff had not engaged in substantial gainful

23  activity since January 25, 2008, the alleged onset date.  Tr. 89.

24  At step two, the ALJ determined Plaintiff had the following severe

25  impairments: cervical degenerative disc disease, bilateral carpal tunnel syndrome-

26  right greater than left, lumbago, hypertension, and alcohol abuse.  Tr. 89.

27  At step three, the ALJ found Plaintiff did not have an impairment or

28  combination of impairments that met or medically equaled the severity of one of

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

the listed impairments.  Tr. 91.  The ALJ found Plaintiff had the residual function capacity (RFC) to perform less than a full range of light work.  Tr. 91.  The ALJ found that Plaintiff retained the capacity to

> [L]ift and carry up to ten pounds frequently and twenty pounds occasionally . . . sit, stand, and walk each, for a total of six hours in an eight hour work day; [Plaintiff] may never climb ladders, ropes, and scaffolds; [Plaintiff] may occasionally climb ramps and stairs; [Plaintiff] may occasionally balance, stop, kneel, crouch, and crawl; [Plaintiff] is unlimited with pushing and pulling; [Plaintiff] may frequently handle and finger; [Plaintiff] should avoid concentrated exposure to unprotected heights and use of dangerous, moving machinery.

Tr. 91-92.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 95.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of advertising material distributor, electrical assembler, and office cleaner.  Tr. 95-96.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 25, 2008, through the date of the ALJ's decision.  Tr. 96.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) placing great weight on the opinions of reviewing physician Robert Hoskins, M.D., (2) assessing Plaintiff's RFC, (3) posing an improper hypothetical question to the VE, and (4) not crediting Plaintiff's testimony about the severity of his symptoms.

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DISCUSSION

## A.   Credibility

Plaintiff argues that the ALJ erred in finding his symptom reporting less than credible.  ECF No. 13 at 16-17.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 92.  The ALJ reasoned that Plaintiff was less than credible because his symptom reporting was contrary to (1) the medical evidence, (2) his activities of daily living (ADL), (3) the fact that he attempted to find work, and (4) the fact that his medical providers only prescribed conservative treatment, including physical therapy and use of a TENS unit.  Tr. 92-94.

### 1.  Contrary to the objective medical evidence

The ALJ's first reason for finding Plaintiff less than credible, i.e., that Plaintiff's symptoms are not supported by objective medical evidence, Tr. 92, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ cited to numerous records and objective medical testing that reveal only minimal abnormalities that would not likely cause the level of pain alleged by Plaintiff, i.e., "objective signs and findings [that were] not particularly adverse." Tr. 92-93 (citing Tr. 380 (EMG of bilateral extremities), Tr. 380 (MRI of cervical spine), Tr. 415-16 (X-ray of cervical spine), Tr. 434-35 (X-rays of lumbar and thoracic spine)). The ALJ did not err in citing the objective medical evidence as a factor in discounting Plaintiff's credibility. *Rollins*, 261 F.3d at 857. As discussed *infra*, the ALJ did not solely rely on the objective medical evidence to discount Plaintiff's credibility, but provided additional specific, clear, and convincing reasons to support the ALJ's adverse credibility determination.

## 2. ADL

The ALJ's second reason for finding Plaintiff less than credible, i.e., that Plaintiff's activities cast doubt on his alleged limitations, Tr. 94, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted that Plaintiff reported being able to cook simple meals, clean, do laundry, drive a car, use public transportation, and shop in stores. Tr. 94; *see also* Tr. 93 (ALJ noting that Plaintiff reported gardening and splitting wood) (citing Tr. 324).

The ALJ did not err in discounting Plaintiff's symptom reporting by finding Plaintiff's ADL inconsistent with Plaintiff's reporting. Substantial evidence supports that Plaintiff is largely self-sufficient and able to perform most activities independently. The ALJ did not find that Plaintiff "spend[s] a substantial part of

his day engaged in pursuits involving performance of physical functions that are transferable to a work setting," *Orn*, 495 F.3d at 639; therefore, this reason alone would not support the ALJ's adverse credibility determination. But together with the ALJ's reasoning regarding the objective medical evidence, discussed *supra*, and evidence of conservative treatment, discussed *infra*, the ALJ did not err in discounting Plaintiff's credibility based on his ability to perform ADL.

### 3. Attempts to find work

The ALJ's third reason for finding Plaintiff less than credible, i.e., that he looked for work during the period of his alleged disability, Tr. 94, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

"[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Evidence that a claimant tried to work, and failed, may support the claimant's allegations of disabling pain and such attempts should not be used to discredit the claimant. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).

Plaintiff testified that he looked for work and that he would have taken a job "[i]n a heartbeat" if he was offered one. Tr. 112. But Plaintiff also testified that he likely would not have been able to meet the demands of any job he started. Tr. 112-13.

The ALJ should not have discredited Plaintiff on the basis that he looked for work and that he would have tried to work if given the opportunity. Plaintiff was never able to find work that he could perform, and even if he had found work, he stated that he probably would not be able to do it. Plaintiff should not be penalized for making (unsuccessful) efforts to return to work. *Reddick*, 157 F.3d at 722; *Lingenfelter*, 504 F.3d at 1038-39. The ALJ erred in discrediting Plaintiff on these grounds. But given the other valid reasons given by the ALJ in finding Plaintiff incredible, any error is harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038

(9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

### 4. Symptoms reduced with conservative treatment

The ALJ's fourth reason for finding Plaintiff less than credible, i.e., that his symptoms are reduced with conservative treatment, Tr. 94, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Generally, the fact that a condition can be remedied by treatment or medication is a legitimate reason for discrediting a claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ noted that Plaintiff "treats his impairments conservatively with physical therapy, home exercises, and a TENS unit," and that Plaintiff gets "temporary relief" from the TENS unit. Tr. 94-95.

The medical record up until the date of the ALJ's decision evidences that Plaintiff's treating sources prescribed only conservative treatment as identified by the ALJ. This is a clear and convincing reason to discount Plaintiff's credibility. *See Parra*, 481 F.3d at 751.

### 5. Conclusion

The ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, for finding Plaintiff less than credible regarding the severity of his symptoms. To the extent the ALJ erred in relying upon Plaintiff's attempts to find work to undermine his credibility, the error was harmless.

### B.  Evaluation of the medical evidence

Plaintiff argues that the ALJ erred in giving greater weight to the opinions of reviewing physician Robert Hoskins, M.D., than to the opinions of Plaintiff's other treating and examining sources. ECF No. 13 at 13-15. Plaintiff essentially argues that the ALJ should not have given great weight to Dr. Hoskins' RFC assessment

because the assessment did not account for (1) Valley Hospital records documenting an instance when Plaintiff slipped in his garage, (2) Valley Hospital records documenting an instance when he was assaulted, and (3) Community Health Association of Spokane (CHAS) clinic records, including X-rays and accompanying reports. ECF No. 13 at 14. Plaintiff argues that these records indicate that Plaintiff's conditions "deteriorated" after Dr. Hoskins' August 2011 RFC assessment. ECF No. 13 at 14. Plaintiff seems to argue that these records support finding that Plaintiff has greater limitations than the limitations assessed by Dr. Hoskins and that the testimony of a medical expert would have established as much. ECF No. 13 at 14-15.

Dr. Hoskins reviewed Plaintiff's medical records and completed a physical RFC in August 2011 for purposes of reviewing Plaintiff's applications at the reconsideration level. *See* Tr. 163-80. Dr. Hoskins reviewed Plaintiff's medical records through at least July 25, 2011. Tr. 166. Dr. Hoskins assessed exertional limitations identical to those found by the ALJ in his RFC determination (with the exception that the ALJ found Plaintiff limited to "frequent" manipulation and Dr. Hoskins assessed Plaintiff with no manipulative limitations). *Compare* Tr. 168-69 *with* Tr. 91-92.

The ALJ gave "great weight" to Dr. Hoskins' opinion and essentially adopted Dr. Hoskins' RFC determination except that the ALJ included greater manipulative limitations based on Plaintiff's testimony. Tr. 94.

A non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record supports those findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The Court finds that the records identified by Plaintiff, dated after Dr. Hoskins' August 2011 assessment, do not support greater functional limitations than those assessed by Dr. Hoskins.

As discussed by the ALJ, the Valley Hospital records indicate that Plaintiff

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

1    received treatment for isolated injuries and the injuries did not seem to result in

2    permanent impairments.  Tr. 94 (citing Tr. 413, 420, 422, 424 (Plaintiff's fall); Tr.

3    406-07, 409, 417-18 (assault)).  Without more information concerning the

4    limitations resulting for such injuries, these records do not constitute substantial

5    evidence to find greater limitations than assessed by Dr. Hoskins.  *See Key v.*

6    *Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (mere diagnosis of an impairment is

7    not enough to support a finding of disability, the impairments must actually result

8    in functional limitations that affect a claimant's ability to work).

9            The ALJ also considered the X-rays as part of the records Plaintiff provided

10   from CHAS.  *See* Tr. 92-93 (citing Tr. 434-35).  The Court finds the ALJ's

11   interpretation of Plaintiff's thoracic spine X-ray supported by substantial evidence,

12   but questions whether the ALJ took into account the fact that Plaintiff's lumbar X-

13   ray showed "*severe* degenerative disc space narrowing at L5 S1."  Tr. 434

14   (emphasis added); *cf.* Tr. 92 (ALJ noting only "degenerative changes").  Kevin

15   Bilcher, PA-C, commented that the lumbar X-ray showed "degenerative changes,"

16   but he did not further comment on the extent of the degenerative changes.  Tr. 433.

17   Regardless, like the records from Valley Hospital, the July 2012 X-rays provide

18   little evidence regarding how degenerative changes in Plaintiff's lumbar spine

19   result in any functional limitations.  Mr. Bilcher performed a physical examination

20   of Plaintiff a few days prior to when the X-rays were taken and found that Plaintiff

21   had "lumbar spine . . . tenderness," but only a "moderately reduced [range of

22   motion]."  Tr. 432.  Mr. Bilcher also noted that Plaintiff had a negative straight leg

23   raise and decreased range of motion in lumbar flexion, extension, and rotation.  Tr.

24   432.  Although this evidence could be read to support greater limitations than

25   found by the ALJ, where, as in this instance, the evidence is susceptible to more

26   than one rational interpretation, the Court may not substitute its judgment for that

27   of the ALJ.  *Tackett*, 180 F.3d at 1097.

28           Dr. Hoskins' review was essentially the only information before the ALJ

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

1    about Plaintiff's functional limitations. The ALJ did not err in giving substantial

2    weight to Dr. Hoskins' opinions. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14

3    (9th Cir. 1999) (holding that ALJ properly relied on the opinions of a single

4    examining psychiatrist when the other medical opinions were conclusory and

5    unsubstantiated by relevant medical documentation); *Tonapetyan*, 242 F.3d at 1149

6    (a non-examining physician's opinion may amount to substantial evidence as long

7    as other evidence in the record supports those findings.)

8         Plaintiff further argues that the ALJ should have supplemented the record by

9    eliciting the opinion of a medical expert to aid the ALJ in interpreting Plaintiff's

10   medical records created after Dr. Hoskins' August 2011 RFC assessment. "In

11   Social Security cases the ALJ has a special duty to fully and fairly develop the

12   record and to assure that the claimant's interests are considered." *Smolen v.*

13   *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). The Court concluded *supra* that the

14   records dating after Dr. Hoskins' RFC assessment provide little probative

15   information about Plaintiff's alleged disabilities. As such, the records did not

16   necessarily require interpretation by a medical expert and there is no indication that

17   the ALJ failed to fully and fairly develop the record. The ALJ did not err by failing

18   to elicit the opinion of a medical expert.

19   **C.   RFC and Hypothetical Question**

20        Plaintiff argues that substantial evidence does not support the ALJ's RFC

21   determination that found Plaintiff capable of (1) performing light work, (2)

22   standing or walking six hours a day, (3) unlimited pushing and pulling, and (4)

23   frequent handling and fingering. ECF No. 13 at 18. Plaintiff also argues that the

24   ALJ did not account for these limitations when posing his hypothetical question to

25   the VE. Plaintiff further argues that that his "carpal tunnel condition is severe."

26   ECF No. 13 at 18.

27        A claimant's RFC is "the most [a claimant] can still do despite [her]

28   limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). In formulating a RFC, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In this case, the ALJ found Plaintiff had the RFC to perform less than a full range of light work. Tr. 91. The ALJ found that Plaintiff retained the capacity to

> [L]ift and carry up to ten pounds frequently and twenty pounds occasionally . . . sit, stand, and walk each, for a total of six hours in an eight hour work day; [Plaintiff] may never climb ladders, ropes, and scaffolds; [Plaintiff] may occasionally climb ramps and stairs; [Plaintiff] may occasionally balance, stop, kneel, crouch, and crawl; [Plaintiff] is unlimited with pushing and pulling; [Plaintiff] may frequently handle and finger; [Plaintiff] should avoid concentrated exposure to unprotected heights and use of dangerous, moving machinery.

Tr. 91-92.

The Court concludes that ALJ's RFC determination is supported by substantial evidence and not based on legal error. The Court concluded *supra* that the ALJ did not err in relying upon Dr. Hoskins' RFC assessment. The ALJ's RFC determination is essentially the same as Dr. Hoskins' RFC assessment although the ALJ found Plaintiff limited to "frequent" manipulation and Dr. Hoskins assessed Plaintiff with no manipulative limitations. *Compare* Tr. 168-69 *with* Tr. 91-92. Although Plaintiff alleges greater limitations than assessed by Dr. Hoskins, he fails to identify substantial evidence supporting such alleged limitations. For instance, Plaintiff alleges that his carpal tunnel syndrome results in greater manipulative limitations. But as noted by the ALJ, Plaintiff's treating sources opined that Plaintiff's carpal tunnel syndrome is mostly asymptomatic. Tr. 93 (citing Tr. 324).

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

Plaintiff himself testified that his carpal tunnel usually only bothers him when he puts on a jacket or if there is stress on his shoulders. Tr. 131. Plaintiff fails to show that his impairments cause greater limitations than those included in the ALJ's RFC determination.

Plaintiff also argues that the ALJ's hypothetical question to the VE was inadequate because it failed to account for Plaintiff's physical impairments. ECF No. 13 at 18. An ALJ is only required to present the VE with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). As discussed *supra*, the Court concluded that the ALJ did not err in finding Plaintiff less than credible or in evaluating the medical evidence and determining Plaintiff's RFC. The ALJ did not err because the ALJ's hypothetical question to the VE set out all of Plaintiff's limitations and restrictions.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and not based on legal error. Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 30, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 14